# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| TIMOTHY MOHLER,<br>        Appellant, | DOCKET NUMBER<br>CH-1221-18-0119-W-2 |
| v. | |
| DEPARTMENT OF HOMELAND<br>   SECURITY,<br>        Agency. | DATE: July 18, 2022 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Richard R. Renner, Esquire, Washington, D.C., for the appellant.

Karen R. Hiyama and Patricia Boxold, Detroit, Michigan, for the agency.

Gregory Guaccio, Esquire, Washington, D.C., for *amicus curiae*, Office of
   Special Counsel.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt recused himself and
did not participate in the adjudication of this appeal.

---

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law. Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions. In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**REMAND ORDER**

¶1    The appellant has filed a petition for review of the initial decision, which denied corrective action in this individual right of action (IRA) appeal.  For the reasons discussed below, we GRANT the appellant's petition for review, MODIFY the initial decision to find that the appellant established a prima facie case of whistleblower reprisal, MODIFY the basis for but still find that the appellant did not engage in protected activity under 5 U.S.C. § 2302(b)(9)(C), VACATE the administrative judge's finding that the agency proved by clear and convincing evidence that it would have taken the same action in the absence of the appellant's disclosure, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

**BACKGROUND**

¶2    The appellant is employed as a GS-12 Field Technology Officer (FTO) with the agency's Customs and Border Protection (CBP), Office of Information Technology (OIT).  *Mohler v. Department of Homeland Security*, MSPB Docket No. CH-1221-18-0119-W-1, Initial Appeal File (IAF), Tab 1 at 1; *Mohler v. Department of Homeland Security*, MSPB Docket No. CH-1221-18-0119-W-2, Refiled Appeal File (RAF), Tab 13 at 5, Tab 26 at 4.  Prior to the events at issue in this appeal, he was allowed to use office space at the U.S. Border Patrol (USBP) Detroit Sector Headquarters on Selfridge Air National Guard Base (ANGB) in Harrison Township, Michigan.[2]  RAF, Tab 26 at 4.

¶3    On August 11, 2015, a Maintenance Mechanic with CBP's Facilities Management and Engineering, who was also stationed at the USBP's Detroit Sector Headquarters, reported "constant harassment" by an unspecified employee, who was subsequently determined to be the appellant.  IAF, Tab 16 at 32-34.  On

---

[2] The agency explained that, although the OIT offices were located in Walled Lake, Michigan, the appellant was allowed to use office space of USBP, a CBP component, to avoid a 50-mile commute from his home.  IAF, Tab 16 at 9.

August 12, 2015, the appellant's supervisor reported the harassment allegation to the Joint Intake Center (JIC), the agency's clearinghouse for allegations of misconduct, which opened an inquiry into the matter (case number 201509037). *Id.* at 12, 32, 59. On August 13, 2015, the appellant emailed the JIC and the agency's Computer Security Incident Response Center (CSIRC) alleging multiple instances of misconduct by the Maintenance Mechanic, including that he left his Government computer unattended and unlocked with his personal identity verification (PIV) card still in the card reader, and attaching as evidence a number of photos of the workstation and PIV card taken during 2014 and 2015.[3] IAF, Tab 16 at 186-97; RAF, Tab 20 at 26, 32-40. Shortly thereafter, his email to CSIRC was forwarded to his supervisor. RAF, Tab 20 at 31.

¶4 On August 14, 2015, the Acting Deputy Executive Director for Field Support for OIT (DxD) participated in the Assistant Commissioner's daily telephonic briefing regarding information technology matters. Hearing Transcript (HT) at 115-20 (testimony of the DxD). After the telephonic briefing, he sent an email to management officials stating he had heard that an FTO had reported that another employee had taken photos of his unlocked and unattended computer with his PIV card in the card reader and, although he later acknowledged that he must have misheard this detail, that the employee used the FTO's email account to send those photos. IAF, Tab 16 at 206; HT at 118 (testimony of the DxD). On August 17, 2015, the appellant's supervisor reported to JIC that the appellant had used the Maintenance Mechanic's email account, and the JIC opened a new inquiry into this allegation (case number 201509237). IAF, Tab 16 at 181, 184.

¶5 The agency referred both administrative inquiries into the appellant's conduct (case numbers 201509037 and 201509237) to a factfinder for investigation. IAF, Tab 16 at 200-02. Pending the completion of the investigation, the agency temporarily relocated the appellant to the Walled Lake

---

[3] The JIC opened an administrative inquiry (case number 201509102) into the appellant's allegations against the Maintenance Mechanic. RAF, Tab 20 at 23.

Field Support Office and suspended his administrative rights, which precluded him from utilizing any administrative account to access any Government-owned workstation or network. *Id.* at 87. On December 9, 2015, CBP Internal Affairs completed an administrative inquiry report based on the factfinder's investigation, which was forwarded to the appellant's second-level supervisor for review on January 5, 2016. IAF, Tab 16 at 30-31, 43-50. On February 22, 2016, he informed the appellant that the allegations against him were found to be unsubstantiated and that the case had been closed. *Id.* at 29. The agency then restored his administrative access and returned him to the USBP Detroit Sector Headquarters Selfridge ANGB.[4] *Id.* at 25; RAF, 16 at 140, Tab 26 at 4.

¶6        In or around June 2017, the appellant filed a complaint with the Office of Special Counsel (OSC) alleging that, in retaliation for his August 13, 2015 disclosure to CSIRC regarding the Maintenance Mechanic's computer security violation—namely, leaving his Government computer unattended while unlocked with his PIV card still in the card reader on multiple occasions—the agency conducted an unwarranted investigation into his conduct, moved him to another duty station, and suspended his administrative access, which precluded him from performing his usual duties, deprived him of overtime opportunities, and caused him to lose out on performance award and career advancement opportunities.[5] RAF, Tab 16 at 139-40. In a letter dated October 10, 2017, OSC informed the appellant that it had made a preliminary determination to close its inquiry into his allegations without action. *Id.* at 139-44. The appellant responded by email on October 19 and 23, 2017, restating the allegations made in his initial complaint.

---

[4] It appears that, although the appellant was allowed to return to Selfridge ANGB in February 2016, his duty station was subsequently moved back to Walled Lake. IAF, Tab 1 at 1; RAF, Tab 16 at 140, 143.

[5] OSC docketed this complaint as OSC File. No. MA-17-3672. RAF, Tab 16 at 139. OSC indicated in its preliminary determination letter that the appellant filed his OSC complaint on May 22, 2017. RAF, Tab 16 at 139. In its closure letter, it indicated that he filed it on June 8, 2017. *Id.* at 145. The appellant did not provide a copy of his OSC complaint or any subsequent correspondence with OSC.

*Id.* at 145. By letters dated November 8, 2017, OSC informed him that it was closing its investigation into his complaint without action and that he had the right to request corrective action from the Board.[6] *Id.* at 145-47.

¶7 The appellant timely filed the instant IRA appeal regarding the matters raised in OSC File No. MA-17-3672, alleging that the agency retaliated against him for reporting a computer security violation by suspending his computer systems access, assigning him administrative duties, moving his duty station, and conducting an unwarranted investigation into his conduct.[7] IAF, Tab 1 at 5, Tab 10 at 4-5, Tab 11 at 4. The administrative judge found that the appellant established jurisdiction over his IRA appeal and that he was entitled to the hearing he requested. IAF, Tab 19 at 2. On April 20, 2018, the administrative judge granted the appellant's unopposed motion to dismiss the appeal without prejudice to refiling. IAF, Tab 35, Initial Decision. After refiling, the administrative judge held the requested hearing and issued an initial decision denying the appellant's request for corrective action. RAF, Tab 42, Refiled Initial Decision (RID).

¶8 The appellant has filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. The agency has responded to the petition for review, and the appellant has filed a reply to the agency's response.[8] PFR File, Tabs 3, 6. In addition, OSC has filed an amicus brief. PFR File, Tab 10.

---

[6] In its closure letter, OSC clarified that its final determination applied only to OSC File No. MA-17-3672 and that its investigation into the appellant's other OSC complaint (OSC File No. MA-18-0164), which he filed on October 11, 2017, regarding incidents from 2016, was still open. RAF, Tab 16 at 145.

[7] Although the appellant indicated on his initial appeal from that he was appealing an involuntary resignation, he subsequently clarified that he was not challenging any alleged involuntary resignation. IAF, Tab 1 at 3, Tab 11 at 4.

[8] The appellant has also filed two motions to amend the petition, one alleging an additional error in the initial decision, PFR File, Tab 8, and one requesting an opportunity to brief *Delgado v. Department of Justice*, 966 F.3d 556 (7th Cir. 2020), which was issued after the close of the record on review, PFR File, Tab 13. We grant the appellant's motion to amend for an additional allegation of error, but we deny his

**ANALYSIS**

¶9     Under the Whistleblower Protection Enhancement Act (WPEA), the Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations of the following:  (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the protected disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).  *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).  Once he establishes jurisdiction over his IRA appeal, he is entitled to a hearing on the merits of his claim at which he must prove his prima facie case, i.e., that he made a protected disclosure or engaged in protected activity that was a contributing factor in a personnel action taken against him, by preponderant evidence.[9]  5 U.S.C. § 1221(e)(1); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015).  If the appellant makes out a prima facie case, the agency is given an opportunity to demonstrate, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure or activity.[10]  5 U.S.C. § 1221(e)(1)-(2); *Lu*, 122 M.S.P.R. 335, ¶ 7.

¶10    Here, the administrative judge found, and we agree, that the appellant established jurisdiction over this appeal.  IAF, Tab 19 at 2; RID at 6-7.  On the merits of his appeal, however, she found that he failed to establish a prima facie case of whistleblower reprisal and that, in the alternative, the agency

---

motion to amend for additional argument on *Delgado*.  The appellant will have an opportunity to brief *Delgado* on remand to the extent that he deems it still relevant to the issues at that stage of the proceedings.

[9] Preponderant evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely true than untrue.  5 C.F.R. § 1201.4(q).

[10] Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R. § 1209.4(e).

demonstrated by clear and convincing evidence that it would have temporarily suspended the appellant's computer systems access, resulting in his assignment to administrative duties, in the absence of any whistleblowing. RID at 7-18. The appellant challenges many of these findings on review.[11] PFR File, Tabs 1, 6, 8.

The appellant made a protected disclosure.

¶11        A protected disclosure is a disclosure that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8)(A); *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 18 (2013). A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to, or readily ascertainable by, the appellant could reasonably conclude that the agency's actions evince one of the types of wrongdoing listed in section 2302(b)(8)(A). *Chavez*, 120 M.S.P.R. 285, ¶ 18. The appellant need not prove that the matter disclosed actually established one of the listed types of wrongdoing but only that a reasonable person in his position would have believed that it did. *Id.*

¶12        As noted above, the exhausted disclosure at issue in this appeal involves the appellant's report to CSIRC on August 13, 2015, that the Maintenance Mechanic consistently left his Government computer unattended while unlocked with his

---

[11] In addition, the appellant argues on review the administrative judge erred in denying his request to compel discovery—namely, his request for "all emails, text messages and other electronically stored information" directed to or received by 21 agency officials from July 1, 2015, onwards that included "any of the following strings of characters (not case sensitive): violat, discrim, retaliat, repris, investigat, Tim, Mohler, whistleblow, OSC"—on the ground that it was overbroad and burdensome when compared to the three alleged personnel actions. PFR File, Tab 1 at 39; RAF, Tab 11 at 25, Tab 23 at 4-5. An administrative judge has broad discretion in ruling on discovery matters, and absent an abuse of discretion the Board will not find reversible error in such rulings. *Kingsley v. U.S. Postal Service*, 123 M.S.P.R. 365, ¶ 16 (2016). We find no such abuse of discretion here, especially in light of the fact that, pursuant to the administrative judge's order, the agency provided declarations from 20 of the officials identified in the appellant's document request attesting that they did not possess any relevant or material emails that had not already been produced by the agency in the agency file or during discovery. RAF, Tab 23 at 4-5, Tab 37.

PIV card inserted in the card reader. RAF, Tab 16 at 139-40, Tab 20 at 32-40. The appellant argued that this disclosure evidenced a violation of the agency's computer security policy and the Computer Security Act of 1987, as well as a substantial and specific danger to public health and safety. IAF, Tab 1 at 16; RAF, Tab 41 at 14-16. The administrative judge found that, although the appellant disclosed a violation of the agency's computer security policy, his disclosure was not protected because he made the disclosure in furtherance of a personal vendetta and not because he had a reasonable belief that the disclosure evidenced a violation of law, rule, or regulation or an immediate likelihood of harm. RID at 7-11. As the appellant points out on review, however, an appellant's motive in making a disclosure is not relevant to whether the disclosure is protected. *See Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶ 18 (2011) (finding that the appellant's allegedly vindictive motive for disclosing the misdiagnosis was immaterial to whether the disclosure was protected); *Williams v. Department of Defense*, 46 M.S.P.R. 549, 553 n.5 (1991) (recognizing that personal motivation for making a disclosure is irrelevant to whether the disclosure is protected). Accordingly, the administrative judge improperly relied on the appellant's motive in finding that his disclosure was not protected, and we modify the initial decision consistent with this section to apply the correct analysis and to find, for the reasons discussed below, that the appellant made a protected disclosure of a violation of law, rule, or regulation.

¶13     As noted above, the appellant contends, among other things, that his disclosure evidenced a violation of the agency's computer security policy. RAF, Tab 41 at 14-16; PFR File, Tab 1 at 21-24. Although the parties did not provide a copy of the agency's computer security policy, the record reflects that there is such a policy and that it requires employees to secure their equipment, ensure that it was not left unattended, and to remove their PIV cards when they were not in use. RAF, Tab 16 at 221; HT at 38 (testimony of the appellant's supervisor); 91−92 (testimony of the appellant's third-level supervisor). We find that this

policy constitutes a rule within the meaning of section 2302(a)(2). *See Rusin v. Department of the Treasury*, [92 M.S.P.R. 298](#), ¶¶ 15-17 (2002) (finding that, although the WPEA does not define "rule," it includes established or authoritative standards for conduct or behavior). Accordingly, we find that the appellant made a protected disclosure of a rule as he had a reasonable belief that leaving a workstation unattended while unsecured with the PIV card inserted violated the agency's computer security policy.[12]

The appellant has not shown that he engaged in protected activity.

¶14      The appellant also argued below that he engaged in protected activity when he reported the computer security violation to CSIRC because section 2302(b)(9)(C) protects cooperating with or disclosing information to the Inspector General or "any other component responsible for internal investigation or review." RAF, Tab 41 at 14. In the refiled initial decision, the administrative judge found that the appellant's report to CSIRC did not constitute protected activity under section 2302(b)(9)(C) because CSIRC does not qualify as "any other component responsible for internal investigation or review," explaining that CSIRC does not investigate the agency but only investigates internal complaints and issues. RID at 17-18. The appellant challenges this finding on review. PFR File, Tab 1 at 25-26. Although we agree with the administrative judge that the appellant's CSIRC report does not constitute protected activity under section 2302(b)(9)(C), we modify the initial decision consistent with this section to clarify the basis for this holding.

---

[12] Because we find that the appellant's disclosure evidenced a violation of a rule, we need not determine whether he had a reasonable belief that it also evidenced a violation of the Computer Security Act of 1987, which was repealed in 2002, or a substantial and specific danger to public health and safety. *See Kraushaar v. Department of Agriculture*, [87 M.S.P.R. 378](#), ¶ 11 (2000) (finding that, in light of the Board's finding that the appellant's disclosure evidenced a violation of an agency regulation, it was unnecessary to determine whether the disclosure also evidenced an abuse of authority); *see also* E-Government Act of 2002, Pub. L. No. 107-347, § 305(a), 116 Stat. 2899, 2960 (2002) (repealing the Computer Security Act).

¶15     Prior to December 12, 2017, the whistleblower protection statutes provided that "cooperating with or disclosing information to the Inspector General of an agency, or the Special Counsel, in accordance with applicable provisions of law," is protected.  5 U.S.C. § 2302(b)(9)(C); *Edwards v. Department of Labor*, 2022 MSPB 9, ¶ 29.  Effective December 12, 2017, the National Defense Authorization Act of 2018 (NDAA) amended section 2302(b)(9)(C) to provide that, in addition to the Inspector General of an agency or the Special Counsel, a disclosure to "any other component responsible for internal investigation or review" is also protected.  Pub. L. No. 115-91, § 1097(c)(1), 131 Stat. 1283, 1618 (2017).    The    Board    has    held    that    the    NDAA's    amendment    to section 2302(b)(9)(C) is not retroactive.  *Edwards*, 2022 MSPB 9, ¶¶ 30-33.

¶16     As described above, all of the events relevant to this appeal occurred prior to the December 12, 2017 effective date of the NDAA.  Accordingly, as it is not retroactive, the amendment to section 2302(b)(9)(C) does not apply to this appeal, and we need not determine whether the CSIRC constitutes a "component responsible for internal investigation or review" so as to fall within the coverage of the amended section 2302(b)(9)(C).[13]  *Id.*  Rather, to be covered under the pre-NDAA section 2302(b)(9)(C), the appellant must show that he cooperated with or disclosed information to the Inspector General or OSC.  *Id.*, ¶ 29.  He has not alleged, and the record does not reflect, that he cooperated with or disclosed information to the Inspector General.  Although the appellant filed a complaint with OSC in May or June 2017, he has not alleged that the agency's actions at issue in this appeal resulted from that complaint, nor did he exhaust such a claim. Accordingly, we find that the appellant has not shown that he engaged in protected activity under section 2302(b)(9)(C) for purposes of this appeal.

---

[13] In its amicus brief, OSC argues that CSIRC falls within the meaning of the expanded language of section 2302(b)(9)(C), because it uses formalized investigation procedures. PFR File, Tab 10 at 10-11.  We do not reach this issue in light of our determination that the post-NDAA language does not apply here.

The agency subjected the appellant to covered personnel actions.

¶17     As noted above, the appellant must also prove by preponderant evidence that the agency subjected him to a covered personnel action. *See Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 21 (2016).  A "personnel action" is defined as an appointment; a promotion; an action under 5 U.S.C. chapter 75 or other disciplinary or corrective action; a detail, transfer, or reassignment; a reinstatement; a restoration; a reemployment; a performance evaluation under 5 U.S.C. chapter 43 or under title 38; a decision about pay, benefits, or awards concerning education or training if the education or training reasonably may be expected to lead to an appointment, promotion, performance evaluation, or other action described in 5 U.S.C. § 2302(a)(2)(A); a decision to order psychiatric testing or examination; the implementation or enforcement of any nondisclosure policy, form, or agreement; and any other significant change in duties, responsibilities, or working conditions.  5 U.S.C. § 2302(a)(2)(A).

¶18     In the refiled initial decision, the administrative judge found that the appellant established that the agency subjected him to a covered significant change in his duties, responsibilities, or working conditions when it temporarily suspended his administrative access, which resulted in a temporary change in his duties and responsibilities, and relocated him to the Walled Lake facility.  RID at 12-13.  She found that the investigation, however, did not constitute a covered personnel action.  RID at 12.  On review, the appellant argues that the administrative judge failed to consider his allegation that the agency subjected him to a hostile work environment.  PFR File, Tab 1 at 28-30.

¶19     We find no basis to disturb the administrative judge's determination that the appellant's temporary relocation to a new duty station and temporary suspension of his computer systems access, which resulted in his assignment from his FTO duties to administrative duties, constitute significant changes in his duties, responsibilities, or working conditions.  RID at 12-13; *see Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 16 (explaining that agency actions that,

individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities will be found to constitute a personnel action covered by subsection 2302(a)(2)(A)(xii)). In addition, we agree with the administrative judge that the investigation does not constitute a personnel action. RID at 12; *Johnson v. Department of Justice*, 104 M.S.P.R. 624, ¶ 7 (2007). Nonetheless, it is proper to consider evidence regarding the investigation because it is so closely related to the personnel actions that it could have been a pretext for gathering information to retaliate for whistleblowing. *See Johnson*, 104 M.S.P.R. 624, ¶ 7.

¶20     We recognize that, as the appellant argues on review, the administrative judge did not explicitly address his claim that, considering the investigations, relocation, suspension of computer systems access, and assignment to administrative duties together, the agency subjected him to a hostile work environment. RAF, Tab 41 at 20-21. However, any error in this regard did not affect the outcome of the appeal. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984). Although the Board stated in *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 23 (2015), that a hostile work environment itself may constitute a covered personnel action in an IRA appeal, the Board later clarified that allegations of a hostile work environment may establish a personnel action in an IRA appeal only if they meet the statutory criteria, i.e., constitute a significant change in duties, responsibilities, or working conditions, *Skarada*, 2022 MSPB 17, ¶ 16 (citing 5 U.S.C. § 2302(a)(2)(A)). Here, as discussed above, the appellant's temporary relocation to a new duty station, suspension of his computer systems access, and assignment to administrative duties constitute significant changes in his duties, responsibilities, and working conditions under subsection 2302(a)(2)(A)(xii). Therefore, it is unnecessary to determine whether these actions also constitute a significant change in his duties, responsibilities, or working conditions based on a hostile work environment. To the extent the appellant argues that the investigation was part of a hostile work environment

personal action, we disagree because he not shown that the investigation, individually or considered collectively with other agency actions, had any practical and significant effect on the overall nature and quality of his working conditions, duties, or responsibilities.[14]  *See Skarada*, 2022 MSPB 17, ¶ 16.

### The appellant established contributing factor based on the knowledge/timing test.

¶21    As discussed above, the appellant made a protected disclosure on August 13, 2015, when he emailed CSIRC regarding the Maintenance Mechanic's computer security violation, and the agency thereafter subjected him to a covered personnel action.  To establish a prima facie case of whistleblower reprisal, he must next prove by preponderant evidence that his disclosure was a contributing factor in a covered personnel action.  *Scoggins*, 123 M.S.P.R. 592, ¶ 21.  The term "contributing factor" means any disclosure that affects an agency's decision to threaten, propose, take, or not take a personnel action regarding the individual making the disclosure.  *Id.*  The most common way of proving the contributing factor element is the "knowledge/timing test."  *Id.*  Under that test, an appellant can prove that his disclosure was a contributing factor in a personnel action through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action.  *Id.*  Once an appellant has satisfied the knowledge/timing test, he has demonstrated that a protected disclosure was a contributing factor in a personnel action.  *Id.*

¶22    In the refiled initial decision, the administrative judge found that the appellant established that the August 13, 2015 disclosure contributed to his

---

[14]    The NDAA amended 5 U.S.C. § 1214 to allow OSC to petition the Board for corrective action on behalf of an employee due to an agency's investigation of the employee if it was commenced, expanded, or extended in retaliation for protected whistleblowing activity.  5 U.S.C. § 1214(i).  Regardless of any questions as to whether this amendment applies retroactively, it does not apply to this appeal because OSC has not petitioned the Board for such relief.

third-level supervisor's decision to temporarily suspend his administrative access based on the knowledge/timing test. RID at 14. The parties have not challenged this finding on review, and we discern no basis to disturb it. Because the suspension of the appellant's access to Government systems precluded him from performing usual duties as a FTO, we further find that he established contributing factor in connection with his temporary assignment to administrative duties.

¶23 Next, the administrative judge found that the appellant failed to establish that his August 13, 2015 disclosure contributed to the agency's decision to temporarily relocate him to the Walled Lake facility. RID at 13-14. In so finding, she determined that the USBP Detroit Sector Headquarters Director credibly testified that she decided to relocate the appellant on August 11 or 12, 2015, after the Maintenance Mechanic filed his most recent harassment complaint against the appellant on August 11, 2015, but before he made his disclosure on August 13, 2015. *Id.* She further found that the appellant's second- and third-level supervisors only made the decision regarding *where* to temporarily relocate him after the Director decided that the Detroit Sector could no longer accommodate his work location at the Selfridge ANGB. RID at 14. Accordingly, she concluded that the appellant failed to show that his disclosure contributed to the agency's decision to temporarily change his work location. RID at 14. The appellant challenges these findings on review. PFR File, Tab 6, at 20-22, Tab 8 at 4-6. For the reasons that follow, we modify the initial decision to find that the appellant established contributing factor in connection with his temporary relocation.

¶24 While disclosures made after an action has been finalized, even if it is not yet implemented, cannot be a contributing factor in the action, an action that was only "contemplated and in preparation" prior to a disclosure can serve as the predicate personnel action in an IRA appeal. *See Fickie v. Department of the Army*, 86 M.S.P.R. 525, ¶ 9 (2000). Here, the record reflects that the Director of USBP Detroit Sector Headquarters determined that it was no longer tolerable for

the appellant to use their facilities and that he needed to be relocated to another facility at least 1 day prior to his August 13, 2015 disclosure. IAF, Tab 16 at 33-34; RAF, Tab 20 at 32-40. However, there is no evidence that his relocation was finalized until *after* he made the disclosure; rather, there is no evidence that his relocation was finalized until August 19, 2015, when the appellant's second-level supervisor issued him a letter stating that he would be temporarily reassigned to the Walled Lake Field Support Office effective immediately.[15] IAF, Tab 16 at 87. Thus, the appellant may still establish contributing factor in connection with his temporary relocation if he meets the applicable criteria, notwithstanding the fact that the relocation was contemplated and in preparation before he made his August 13, 2015 disclosure. *See Fickie*, 86 M.S.P.R. 525, ¶ 9.

¶25    The appellant's email to CSIRC disclosing the computer security violation was forwarded to his first-level supervisor several hours after he submitted it on August 13, 2015. RAF, Tab 20 at 31. In addition, on August 14, 2015, the appellant's second-level supervisor forwarded to his third-level supervisor the email from the DxD regarding his belief that someone had used an FTO's account to send emails, indicating that it pertained to the "Tim saga at sector." IAF, Tab 16 at 206. The appellant's second-level supervisor signed the August 19, 2015 letter reassigning the appellant to Walled Lake and, at the hearing, his third-levels supervisor testified that "[w]e made the decision as his management chain to move him to [Walled] Lake." IAF, Tab 16 at 87; HT at 94 (testimony of the appellant's third-level supervisor). Thus, because it is clear that the appellant's first-, second-, and third-level supervisors were aware of his

---

[15] The record reflects that the appellant's supervisor met with the appellant on August 17, 2015, and informed him that his administrative access was suspended until further notice. IAF, Tab 16 at 181. There is no indication, however, that he also told the appellant that he would be moved to Walled Lake at that time. *Id.*; HT at 53 (testimony of the appellant's supervisor). In any event, even if the temporary relocation was finalized by that meeting, it occurred after the appellant made his disclosure.

disclosure to CSIRC by no later than August 14, 2015, before they finalized his reassignment to Walled Lake, we find that the appellant has established contributing factor based on knowledge/timing.

¶26       In light of the foregoing, we find that the appellant established a prima facie case of whistleblower retaliation.  Specifically, he proved by preponderant evidence that he made a protected disclosure of a violation of a law, rule, or regulation and that this disclosure contributed to the agency's decision to temporarily relocate him and temporarily suspend his administrative access, which resulted in the change to his duties and responsibilities.

We vacate the administrative judge's alternative finding that the agency met its burden to show that it would have taken some of the same actions in the absence of the appellant's disclosure and remand for a new clear and convincing analysis.

¶27       As noted above, when an appellant makes out a prima facie case of whistleblower reprisal, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure or activity.  5 U.S.C. § 1221(e)(1)-(2); *Lu*, 122 M.S.P.R. 335, ¶ 7.  Here, after finding that the appellant failed to establish a prima facie case of whistleblower reprisal, the administrative judge determined in the alternative that the agency proved by clear and convincing evidence that it would have temporarily suspended the appellant's computer systems access, which resulted in a temporary change to his work duties, even in the absence of his disclosure.  RID at 15-17.  Under the WPEA, however, the Board may not proceed to the clear and convincing test unless it has first made a finding that the appellant established his prima facie case.  5 U.S.C. § 1221(e)(2); *Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014), *aff'd*, 623 F. App'x 1016 (Fed. Cir. 2015).  Accordingly, because the administrative judge found that the appellant failed to establish a prima facie case of whistleblower reprisal, it was inappropriate for her to proceed to the clear and convincing test.  *See Scoggins*, 123 M.S.P.R. 592, ¶ 28.  Nonetheless, in light of

our determination on review that the appellant has established a prima facie case of whistleblower reprisal, it is now necessary and appropriate to address whether the agency has shown by clear and convincing evidence that it would have taken the same actions in the absence of his protected disclosure.

¶28    In determining whether an agency has met this burden, the Board will consider the following factors:  (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.  *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).  The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence.  *Lu*, 122 M.S.P.R. 335, ¶ 7.  Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole.  *Id.*  A proper analysis of the clear and convincing evidence issue requires that all of the evidence be weighed together—both the evidence that supports the agency's case and the evidence that detracts from it.  *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 37 (2013) (citing *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012)).

¶29    In the refiled initial decision, the administrative judge did not address whether the agency met is burden to prove that it would have temporarily relocated the appellant in the absence of his disclosure but, as noted above, found that the agency met its burden with respect to the temporary suspension of his computer systems access and assignment to administrative duties.  RID at 15-17.  In so finding, she determined that, as to the first *Carr* factor, the agency's decision to suspend the appellant's computer systems access pending an investigation was supported by reasonably strong evidence.  *Id.*  As to the second *Carr* factor, she found that the appellant's third-level supervisor, who was responsible for the decision to suspend his computer systems access, had no

motive to retaliate against him for his protected disclosure because it concerned a security violation by a person with whom she had no contact or supervisory connection. RID at 17. As to the third *Carr* factor, she found that the agency did not provide any evidence of nonwhistleblowers who had their computer systems access suspended under similar circumstances. *Id.* The appellant challenges these findings on review. PFR File, Tab 1 at 31-37.

¶30    Although we discern no basis to disturb the administrative judge's credibility-based determination that the agency's action was supported by reasonably strong evidence, her analysis of the second and third *Carr* factors are incomplete and inconsistent with Board and Federal Circuit case law. In particular, she took an overly restrictive view of the second *Carr* factor by not considering motive to retaliate on the part of the DxD, whose email influenced the appellant's third-level supervisor's decision to temporarily suspend his computer systems access pending an investigation into his alleged use of the Maintenance Mechanic's email account. *See Phillips v. Department of Transportation*, 113 M.S.P.R. 73, ¶ 21 (2010) (explaining that, when evaluating the second *Carr* factor, the Board will consider any motive to retaliate on the part of the agency official who ordered the action, as well as any motive to retaliate on the part of other agency officials who influenced the decision). She further took an overly restrictive view of the second *Carr* factor by not addressing whether the appellant's disclosure reflected on the responsible officials in their capacities as managers and employees, which is sufficient to establish a substantial retaliatory motive even when the disclosure does not directly implicate or harm them. *See Chavez*, 120 M.S.P.R. 285, ¶ 33 (citing *Whitmore*, 680 F.3d at 1370-71). Moreover, the administrative judge appeared to find, without analysis, that the third *Carr* factor was neutral because there was no comparator evidence. RID at 17. However, the Federal Circuit has emphasized that it is the agency's burden to produce relevant comparator evidence and that its failure to do so "may be at the agency's peril," and may imperil the agency's overall case. *See Whitmore*,

680 F.3d at 1374-75. Our reviewing court has also stated that, when the agency fails to introduce relevant comparator evidence, the third *Carr* factor cannot weigh in favor of the agency. *Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018). Accordingly, we vacate the administrative judge's clear and convincing analysis.

¶31     Although the record is complete, we find that the administrative judge is in the best position to conduct a new clear and convincing analysis because she heard the live testimony and made credibility determinations. *See Shibuya*, 119 M.S.P.R. 537, ¶¶ 37‑38. Therefore, we find it appropriate to remand this appeal for a new clear and convincing analysis. *See id.* On remand, the administrative judge must determine whether the agency proved the following by clear and convincing evidence: (1) the agency would have temporarily relocated the appellant to the Walled Lake facility in the absence of his protected disclosure; and (2) the agency would have temporarily suspended the appellant's computer systems access (resulting in his assignment to administrative duties) in the absence of his protected disclosure. In conducting her clear and convincing evidence analysis, the administrative judge must comply with the requirements set forth above and in the Federal Circuit's decision in *Whitmore*, 680 F.3d at 1368-74, fully evaluate all of the pertinent evidence, and make credibility determinations in order to resolve any contradictory testimony. *See Shibuya*, 119 M.S.P.R. 537, ¶ 37. In addition, the administrative judge shall specifically determine the weight to afford to each of the three *Carr* factors.

**ORDER**

¶32     For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                              <u>        /s/ for        </u>

                                           Jennifer Everling
                                           Acting Clerk of the Board
Washington, D.C.